J-S60042-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                         :           PENNSYLVANIA
                                           :
           v.                                  :
                                           :
                                           :
JAMES EARL TROOP                   :
                                           :
           Appellant                 :      No. 478 WDA 2017

Appeal from the PCRA Order March 6, 2017
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0001234-1988

BEFORE: OLSON, DUBOW, JJ., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:          **FILED SEPTEMBER 21, 2017**

Appellant, James Earl Troop, appeals from the order entered in the Court of Common Pleas of Erie County dismissing his fifth petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, as untimely filed. We affirm.

The PCRA court provides an apt factual and procedural history as follows:

> On November 15, 1988, Appellant was found guilty by jury of [multiple counts of robbery, criminal conspiracy, theft, receiving stolen property, and related offenses, totaling twelve in all.
>
> On January 9, 1989, Appellant was sentenced to an aggregate sentence of 25.5 to 51 years' incarceration.]
>
> On January 25, 1989, Appellant, by and through his counsel…filed a Motion for Reconsideration of Sentence. On February 7, 1989, Appellant filed a Notice of Appeal to the Pennsylvania Superior Court, by and through [new counsel]. On March 1, 1989, [the trial court] denied Appellant's Motion for

_____
* Former Justice specially assigned to the Superior Court.

Reconsideration of Sentence. On March 19, 1990, the Pennsylvania Superior Court affirmed Appellant's judgment of sentence.

Appellant filed his first PCRA Petition on Sept 11, 1991, [and counsel was appointed.] On March 23, 1992, [the PCRA Court denied his first petition.] Appellant filed a notice of appeal to the Pennsylvania Superior Court on April 15, 1992, and, on April 23, 1993. the Superior Court affirmed [the lower court's order denying relief].

Appellant filed his second PCRA petition on January 28, 1994. [The PCRA court denied relief on October 11, 1995. This Court affirmed on November 21, 1996].

Appellant filed his first "Motion for New Trial based upon After-Discovered Evidence" on April 17, 1997. [The PCRA court appointed counsel and eventually denied Appellant's "Motion" on December 30, 1997. Appellant filed his second "Motion for New Trial based on Newly Discovered Evidence" on November 13, 1998. The PCRA court denied relief on both motions, and the Superior Court affirmed the order disposing of Appellant's first Motion, the only one he appealed.]

Appellant filed his third "Motion for New Trial based on Newly Discovered Evidence" on December 27, 1999. [The PCRA court denied relief on this motion, and this Court affirmed.]

Appellant filed [what was effectively his sixth PCRA petition, *pro se*, on May 12, 2009. The PCRA court dismissed the petition on August 18, 2009, and this Court affirmed on April 9, 2010.]

Appellant filed a "Motion to Vacate Illegal Sentence" on December 28, 2011. The PCRA court dismissed it on March 5, 2012.

Appellant filed a "Petition for Writ of Habeas Corpus" [on March 14, 2012. The lower court denied relief on March 15, 2012, and this Court affirmed the denial of habeas relief on January 18, 2013.]

Appellant filed a "Motion for Post-Conviction Collateral Relief and/or Petition to Set Aside/Modify Unlawful Sentencing Order" [through counsel, and the PCRA court dismissed it on November

20, 2015.] Appellant filed a pro se Notice of Appeal to [this Court on December 21, 2015, and we affirmed on July 8, 2016.]

Appellant filed the instant PCRA petition . . . on December 29, 2016. By Order dated January 4, 2017, [the PCRA Court] directed the Commonwealth to respond to Appellant's . . . PCRA petition within thirty (30) days. On January 31, 2017, the Commonwealth filed a Response to Appellant's . . . PCRA Motion. On February 7, 2017, the [PCRA Court] notified Appellant of its intent to dismiss his . . . PCRA Petition as patently untimely and provided twenty (20) days for Appellant to file Objections to this Trial Court's Notice. Appellant filed his Argument Regarding Intent to Dismiss PCRA on February 27, 2017. On March 6, 2017, [the PCRA court] dismissed Appellant's . . . PCRA Petition as patently untimely.

Appellant filed a Notice of Appeal to the Pennsylvania Superior Court on March 13, 2017. This Trial Court filed its 1925(b) order on March 27, 2017. Appellant filed his Concise Statement of Reasons Complained of on Appeal, 42 Pa.R.A.P. 19259b), on April 7, 2017.

PCRA Court Opinion, 5/4/2017.

Preliminarily, we must determine whether Appellant's instant PCRA petition was timely filed. *See Commonwealth v. Hutchins*, 760 A.2d 50 (Pa.Super. 2000). "Our standard of review of the denial of PCRA relief is clear; we are limited to determining whether the PCRA court's findings are supported by the record and without legal error." *Commonwealth v. Wojtaszek*, 951 A.2d 1169, 1170 (Pa.Super. 2008) (quotation and quotation marks omitted).

The most recent amendments to the PCRA, effective January 19, 1996, provide that a PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment is deemed final "at the conclusion of

direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking review." 42 Pa.C.S.A. § 9545(b)(3).

The three statutory exceptions to the timeliness provisions in the PCRA allow for very limited circumstances under which the late filing of a petition will be excused. 42 Pa.C.S.A. § 9545(b)(1). To invoke an exception, a petition must allege and the petitioner must prove:

> (i) the failure to raise a claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or the law of this Commonwealth or the Constitution or law of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)–(iii).

"We emphasize that it is the petitioner who bears the burden to allege and prove that one of the timeliness exceptions applies." ***Commonwealth v. Marshall***, 596 Pa. 587, 947 A.2d 714, 719 (2008) (citation omitted). Further, a petitioner asserting a timeliness exception must file a petition within sixty days of the date the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2).

Appellant contends that the PCRA court erroneously dismissed his patently untimely petition[1] where the petition raised a claim qualifying for the newly-discovered facts exception to the PCRA time-bar as delineated in Section 9545(b)(1)(ii). This Court has explained the requirements attendant to a newly-discovered fact claim under Section 9545(b)(1)(ii):

> The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. *Commonwealth v. Bennett*, 593 Pa. 382, 395, 930 A.2d 1264, 1271 (2007). Due diligence demands that the petitioner take reasonable steps to protect his own interests. *Commonwealth v. Carr*, 768 A.2d 1164, 1168 (Pa.Super. 2001). A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. *Commonwealth v. Breakiron*, 566 Pa. 323, 330–31, 781 A.2d 94, 98 (2001); *Commonwealth v. Monaco*, 996 A.2d 1076, 1080 (Pa.Super. 2010), *appeal denied*, 610 Pa. 607, 20 A.3d 1210 (2011). This rule is strictly enforced. *Id*. Additionally, the focus of this exception "is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts." *Commonwealth v. Marshall*, 596 Pa. 587, 596, 947 A.2d 714, 720 (2008) (emphasis in original).

*Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa.Super. 2015).

In his petition, Appellant asserted that DiPaolo had recently published a book in which the detective admitted that Appellant was arrested and charged with three counts of robbery prior to any evidence linking him to the

---

[1] Appellant filed the present PCRA petition over 26 years after his judgment of sentence became final on or about Monday, April 16, 1990, when the thirty-day time period for filing a petition for allowance of appeal with our Supreme Court expired. See 42 Pa.C.S.A. § 9545(b)(3); Pa.R.A.P. 1113.

robberies. This admission, Appellant claims, proves that his arrest was prompted not by probable cause but by the detective's hunch that Appellant was somehow involved in the robberies.

On this point, Appellant argues the following facts were previously unknown to him:

> (1)That the arresting officer in this case would publish a book, nearly thirty (30) years later, and basically admit to what this defendant was alleging at trial, that he was arrested and charged with three counts of robbery over twelve (12) hours prior to any evidence linking this defendant to any robberies! [Detective] DiPaolo also admits in the book that this petitioner was arrested for crimes that happened in Meadville, PA ….
>
> (2)The petitioner raised the claims of being arrested without probable cause and that the arresting officer was framing this petitioner because of his involvement in the Frank Rotunda case. DiPaolo's book is the source of this newly discovered evidence.
>
> (3)In the book DiPaolo is admitting that he contacted the Meadville authorities on the evening of April 14, 1988 and told them that he suspected that this petitioner and his brother was responsible for the robbery and shooting in Meadville. (The book is the source of this petitioners [sic] claim that DiPaolo contacted the Meadville authorities on 4/14/88).
>
> (4)DiPaolo states in the book that he "immediately had this petitioner arrested on the Meadville charges on his own suspicion." (See exhibit #1).

Appellant's brief at 3.

In Appellant's "Exhibit 1," he presents an excerpt from the book co-authored by DiPaolo, entitled "The Unholy Murder of Ash Wednesday: The Stained Life and Rude Times of Mob Wannabe 'Bolo' Dovishaw." As indicated, Appellant claims the excerpt reveals new facts that were

previously unknown and unknowable through the exercise of due diligence.
The excerpt reads as follows:

> DiPaolo was later assigned to investigate a rash of armed robberies. He quickly developed the Troops and their pals as prime suspects. After DiPaolo served search warrants at homes where the Troops were known to stay, the brothers fled town. A short time later, while DiPaolo watched the local evening news, he learned the owner of a Meadville, Pennsylvania, jewelry store was shot, along with a customer, during an armed robbery. After hearing the description of the robbers, the Erie cop contacted Meadville Police. The robbery M.O. was similar to that used by the Troops. He did not hesitate to arrest the brothers.

Appellant's Exhibit 1 (excerpt from "The Unholy Murder of Ash Wednesday: The Stained Life and Rude Times of Mob Wannabe 'Bolo' Dovishaw," p. 337).

Initially, we address whether Appellant filed the present claim within sixty days of the date the claim could have been presented as he was required to do in order to preserve his claim pursuant to Section 9545(b)(2). The source of Appellant's purported new evidence is Detective DiPaolo's memoir, which was first published on June 27, 2014. Appellant filed the instant PCRA petition on December 29, 2016, over two and one-half years after the book became available to the public.

Appellant baldly alleged in his petition that he first learned of the DiPaolo's book on December 14, 2016. We take judicial notice of the fact that the memoir discussing, *inter alia*, Appellant's arrest has been available for purchase on Amazon.com since June of 2014, and that the Amazon webpage presently offering the book for sale contains numerous reviews from Amazon customers who purchased the book in 2014 and 2015. As

Appellant, therefore, failed to plead *and prove* that he filed his petition within 60 days of the date that the memoir became available to him through the exercise of due diligence, he does not qualify for the newly discovered evidence exception. Consequently, we may affirm the order of the PCRA court on this basis.

Order is AFFIRMED.

Dubow, J. joins the memorandum.

Olson, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/2017